**MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP**
(A Limited Liability Partnership Formed in Pennsylvania)
By:     Charles B. Casper (CC-1601)
        Mary F. Platt (MP-9643)
        Kristen E. Polovoy (KP-4440)
LibertyView, Suite 600
457 Haddonfield Road
Cherry Hill, NJ  08002
(856) 488-7700
ATTORNEYS FOR DEFENDANT MICROSOFT CORPORATION

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## TRENTON VICINAGE

| | | |
|---|---|---|
| JAMES R. MALONEY, MARYLEE M. MALONEY, and CATHERINE SMITH, on behalf of themselves and all others similarly situated, | : : : : | Civil Action No. |
| Plaintiffs, | : : | |
| v. | : : | |
| MICROSOFT CORPORATION, | : : | |
| Defendant. | : | |

---

## DEFENDANT'S NOTICE OF REMOVAL

TO THE CLERK OF THE COURT AND TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that Defendant Microsoft Corporation

("Microsoft"), by and through its attorneys, removes to this Court the action

described below under 28 U.S.C. § 1446.  In support of its Notice of Removal,

Microsoft states as follows:

1.      On March 13, 2009, Plaintiffs James R. Maloney, Marylee M.

Maloney, and Catherine Smith filed a Complaint in the Superior Court of New

Jersey, Law Division, County of Middlesex, Docket No. L-2309-09, captioned

*James R. Maloney, Marylee M. Maloney, and Catherine Smith, on behalf of*
*themselves and all others similarly situated v. Microsoft Corporation.*

      2.      On March 30, 2009, Plaintiffs served the Summons and Complaint
on Microsoft.

      3.      True and correct copies of the Summons and Complaint, which
constitute "all process, pleadings, and orders served upon" Microsoft, *see* 28
U.S.C. § 1446(a), are attached hereto as Exhibit A.

      4.      A copy of this Notice of Removal is being filed with the Clerk of
the Superior Court of New Jersey, Law Division, County of Middlesex, and is
being served on counsel of record under 28 U.S.C. § 1446(d).

      5.      Plaintiffs allege that Microsoft sells portable electronic music or
"MP3" players called Zunes with hard disk drives having capacities of 30
gigabytes ("GB"), 80 GB, and 120 GB, and that these Zunes have design defects.
Specifically, Plaintiffs allege that "the internal LCD panels in their Zunes had
cracked even though the devices had not been subjected to any substantial impact
or shock beyond that associated with normal use of a portable MP3 player," and
that "[t]he cracked LCD panels rendered the affected Zunes unusable for their
intended purpose." Compl. ¶¶ 18, 20.

      6.      Plaintiffs further allege that "[t]he cracks in the LCD panels in the
affected Zunes were caused by defects in the internal design of the Zune" and that
these "internal design defects" included:

      a.      Inappropriate placement of other internal components relative to the
              LCD panel;

      b.      Insufficient space between the LCD panel and adjacent internal
              components;

c.      Insufficient shock absorption materials between the LCD panel and other internal components;

d.      The use of unsuitable materials in components directly contacting the glass LCD panel;

e.      The use of unsuitable, flexible materials intended to absorb shock and protect the LCD screen from impact with other components, but which instead amplified shock and promoted cracking of the rigid, glass LCD panel;

f.      Insufficient reinforcement and protection of the edges of the LCD panel where the glass is especially vulnerable to cracking due to flaws that inevitably remain from the glass cutting process during manufacturing.

Compl. ¶¶ 21, 22.

7.      Plaintiffs allege that "[a] substantial number of the affected Zune owners submitted warranty claims to Microsoft for the replacement of the cracked internal LCD panels" and that "Microsoft rejected the affected owners' warranty claims for repair of the cracked LCD panels." Compl. ¶¶ 28, 29.

8.      Plaintiffs allege that an 80 GB Zune that Plaintiffs James R. Maloney and Marylee M. Maloney purchased and a 30 GB Zune that Plaintiff Catherine Smith received as a gift developed cracked liquid crystal display ("LCD") screens without being dropped or subjected to substantial impact, that Plaintiffs asked Microsoft to repair their LCD screens under the written Zune warranty, but that Microsoft rejected their warranty claims. Compl. ¶¶ 35-39, 42-49.

9.      Plaintiffs assert claims for alleged violations of the Washington Consumer Protection Act ("WCPA"), RCW 19.86.020 *et seq.* (Count I), Compl. ¶¶ 66-74, and alleged breach of the implied warranty of merchantability under the

Washington Uniform Commercial Code, RCW 62A.2-314 (Count II), Compl. ¶¶ 75-82.

10.     In Count I of the Complaint, Plaintiffs seek (1) "a money judgment or compensatory damages, consequential damages, incidental damages, and enhanced damages of up to treble damages" under the WCPA, and (2) "injunctive relief requiring Microsoft to cease and desists [sic] its violations of the WCPA relating to the marketing and sales of Zune players." Compl. at 18.

11.     Specifically, Plaintiffs allege that Microsoft's purported violations of the WCPA caused them and members of the proposed class to suffer injury, including without limitation the following:

      a.     The loss of the money paid for their Zunes;

      b.     The cost of replacement of the Zunes with a similar device;

      c.     The loss of the use and enjoyment of their Zunes;

      d.     The cost of repair of their Zunes;

      e.     The diminished value of their Zunes; and

      f.     The cost of diagnosis and/or shipping of their Zunes in connection with wrongfully rejected warranty claims.

Compl. ¶ 73.

12.     In Count II of the Complaint, Plaintiffs seek (1) "a money judgment … for compensatory damages, consequential damages, and incidental damages," and (2) "injunctive relief requiring Microsoft to repair and replace the affected Zunes." Compl. at 18.

13.     Plaintiffs seek to litigate their claims on behalf of themselves and a proposed nationwide class defined as follows:

All United States resident persons who purchased or who owned a
Zune 30GB[,] 80GB, or 120GB model during the class period in which the
liquid crystal display ("LCD") screen cracked without the Zune having
sustained substantial impact. "Substantial impact" as used here means
impact sufficient to crack or chip the outer screen that covers the LCD
screen or to cause damage to any internal component other than the LCD
screen.

A Subclass exists with respect to claims for breach of warranty
directly under the Washington State Uniform Commercial Code, and is
initially defined as:

All members of the Class whose Zunes' LCDs cracked within the
warranty period (one year from the date of purchase unless an extended
warranty was purchased) and who notified Microsoft orally or in writing
of the cracked LCD but did not receive repair or replacement of their
Zunes from Microsoft.

Specifically excluded from the Class and Subclass is any person
and/or any entity in which Microsoft has a controlling interest, and the
officers, directors, employees, affiliates, subsidiaries, legal representatives,
heirs, successors and their assigns of any such person or entity, together
with any immediate family member of any officer, director or employee of
said companies. Also excluded from the class is any judge or magistrate
involved in this matter and members of their immediate family.

Compl. ¶ 53.

14.     The "proposed class period" is defined as "four years prior to the

date on which this Class Action Complaint was filed and runs until Defendant

Microsoft Corporation ceases the complained of practices." Compl. ¶ 52.

15.     As demonstrated below, this Court has jurisdiction over Plaintiffs'

action and it is properly removed to this Court.

## BASIS OF FEDERAL JURISDICTION UNDER CLASS ACTION FAIRNESS ACT

16.     This action is removable to this Court because federal diversity

jurisdiction under 28 U.S.C. § 1332, exists over Plaintiffs' claims pursuant to the

. Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4 (2005) ("CAFA"),

codified in various sections of Title 28 of the United States Code including 28 U.S.C. §§ 1332(d) & 1453.

17.     CAFA became effective on February 18, 2005, and applies to any civil action commenced on or after its date of enactment.  CAFA applies to this action because this action was commenced on March 13, 2009.

18.     Congress enacted CAFA to enlarge federal jurisdiction over proposed class actions.  CAFA provides that a class action against a non-governmental entity may be removed to federal court if: (1) the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs, (2) any member of the proposed plaintiff class is a citizen of a state different from any defendant, and (3) the number of proposed class members is not less than 100.  As set forth below, all of the requirements for removal are met here.  *See* 28 U.S.C. §§ 1332(d)(2), (d)(5), (d)(6) and § 1453(b).

<u>**Amount In Controversy Requirement**</u>

19.     CAFA's first requirement, that the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs, 28 U.S.C. § 1332(d)(2), is met here.

20.     Plaintiffs do not allege in the Complaint that the amount in controversy is less than the jurisdictional minimum for diversity jurisdiction under CAFA, nor do they request a specific sum of damages.  Although Microsoft disputes liability and damages, it is evident that Plaintiffs purport to seek for themselves and the proposed class monetary relief that if granted would, in the aggregate, exceed CAFA's $5 million threshold, exclusive of interest and costs.

-6-

21.     Indeed, the $5 million threshold is met even if the Court looks only to a portion of the relief that Plaintiffs seek in Count II for alleged unfair and deceptive practices in violation of the WCPA, RCW 19.89.020 *et seq*. Compl. ¶¶ 66-74.

22.     Plaintiffs seek to represent a class of "[a]ll United States resident persons who purchased or who owned a Zune 30GB[,] 80GB, or 120GB model during the class period in which the liquid crystal display ('LCD') screen cracked without the Zune having sustained substantial impact." Compl. ¶ 53.

23.     The Microsoft 30 GB Zune was first made available on retail shelves for purchase by consumers in the United States on November 14, 2006; the 80 GB Zune was made available for consumer purchase in the United States on November 13, 2007; and the 120 GB Zune was made available for consumer purchase in the United States on September 16, 2008.  Declaration of Scott Warren ("Warren Decl.") ¶ 6.  A copy of the Warren Declaration is attached hereto as Exhibit B.

24.     The proposed class period includes the entire time when Zunes have been sold beginning November 14, 2006 through the present.  Compl. ¶ 52.

25.     According to Count II, "Plaintiffs and the members of the putative class are ... entitled to relief under the RCWA 19.86.090, including treble damages, injunctive relief and attorneys' fees and costs." Compl. ¶ 74.

26.     Plaintiffs allege injury in Count II that includes "[t]he loss of the money paid for their Zunes." Compl. ¶ 73(a).

27.     Plaintiffs allege that "[t]he retail price of the Zune has typically ranged from approximately $150 to $300." Compl. ¶ 8.

28.     Plaintiffs allege that Plaintiff Catherine Smith received as a gift a 30 GB Zune that was purchased for $150, and that Plaintiffs James R. Maloney and Marylee M. Maloney purchased an 80 GB Zune for $262.49.  Compl. ¶¶ 35, 42.

29.     Treble damages authorized by state consumer protection or consumer fraud acts may be included in calculating the amount in controversy. *See Red Line Marine Liquidators, Inc. v. Jarrett Bay Boat Works Inc.*, Civil No. 08-1863 (AET), 2008 WL 4327001, at *3 (D.N.J. Sept. 17, 2008); *Lewis v. Ford Motor Co.*, __ F. Supp. 2d __, CA No. 09-164, 2009 WL 840233, at *8 (W.D. Pa. Mar. 26, 2009) (citing *Frederico v. Home Depot*, 507 F.3d 188, 199 (3d Cir. 2007).

30.     Attorneys' fees are also considered for purposes of determining the amount in controversy under CAFA, and "could be as much as thirty percent of the judgment." *See Frederico*, 507 F.3d at 199.

31.     Assuming that the proposed class members paid on average $206.25, which is the average between the alleged $150 price of Ms. Smith's 30 GB Zune and the alleged $262.49 price of the Maloneys' Zune (Compl. ¶¶ 35, 42), a potential judgment against Microsoft might include treble damages for each proposed class member of $618.75 plus attorneys' fees of $185.63, bringing the total judgment for each proposed class member to $804.38.  Thus, the $5 million

threshold for diversity jurisdiction under CAFA would be satisfied if there were as few as 6,216 Zunes at issue sold to persons in the United States.

32.     Plaintiffs allege that the 30 GB, 80 GB, and 120 GB Zunes have a design defect, Compl. ¶¶ 18-22, so that, according to them, potentially all of the 30 GB, 80 GB, and 120 GB Zunes that have been sold to consumers are at issue because they could develop a crack in their LCD screens without "substantial impact" as defined by the Complaint, before a judgment in this case.

33.     Microsoft's business records show that from November 14, 2006 through December 26, 2008, Microsoft sold a total of  2,335,185 30 GB, 80 GB, and 120 GB Zunes to retailers, distributors, and other resellers in the United States and to consumers through the ZuneStore and store.microsoft.com, which included:

| 30 GB Zunes | 1,786,421 |
| 80 GB Zunes | 349,273 |
| 120 GB Zunes | 199,491 |

Warren Decl. ¶ 8.

34.     Microsoft's records also show that from November 14, 2006 through December 26, 2008, a total of 2,217,526 30 GB, 80 GB, and 120 GB Zunes were reported to Microsoft as sold to consumers by retailers and other resellers in the United States and through the ZuneStore and store.microsoft.com, which included:

| 30 GB Zunes | 1,747,809 |
| 80 GB Zunes | 324,140 |
| 120 GB Zunes | 145,577 |

Warren Decl. ¶ 10.

35.     Assuming that consumers paid $206.25, which is the average of the alleged $150 price of Ms. Smith's 30 GB Zune and the alleged $262.49 price of the Maloneys' Zune, (Compl. ¶¶ 35, 42), the amount in controversy in this case would be $457,364,738, more than 91 times the $5 million jurisdictional threshold under CAFA.

36.     Microsoft's customer call records also demonstrate that the amount in controversy in this case exceeds $5 million.

37.     Microsoft provides a link on its Web site, www.zune.net, to a toll-free telephone number that Zune owners in the United States can call to obtain technical assistance or make warranty claims (the "toll-free number"). Declaration of T. J. Bultman ("Bultman Decl.") ¶ 3.  A copy of the Bultman Declaration is attached hereto as Exhibit C.

38.     Microsoft's regular practice is to maintain in the ordinary course of its business records of the calls it receives on the toll-free number. ("customer call records").  Bultman Decl. ¶ 4.

39.     During and after the telephone calls to the toll-free number, Microsoft's representatives enter information about the caller, the issue that the caller reported, the Zune that is the subject of the call, Microsoft's response, and other information into an electronic database, which becomes Microsoft's business record of the call.  Bultman Decl. ¶ 5.  The database is programmed to enter some information automatically, including the date and time of the call and the identity of the Microsoft representative.  *Id.*  The initial call for a particular

issue is given a service request ("SR") number and the same SR is to be used for subsequent contacts with the customer on the same issue as well as Microsoft's response. *Id.*

      40.    Microsoft identified 46,516 customer call records for 23,182 SR's that were either coded with the code Microsoft created for calls that report cracked screens (the "cracked screen code") or that mentioned cracked screens before the cracked screen code was implemented and widely used. Bultman Decl. ¶ 7. (There are more customer call records than SR's because there is often more than one record relating to the same SR; customers sometimes call more than once about the same issue, and some records are generated relating to shipping, repairs, and other matters as the customer's issue is resolved.) *Id.* ¶ 4.

      41.    Widely accepted statistical sampling methods use confidence levels and confidence intervals to measure the degree of confidence that a sample taken from a larger population represents what would be found in the entire population if the entire population were studied. Declaration of Fang Yu ("Yu Decl.") ¶ 5. A copy of the Fang Yu Declaration is attached hereto as Exhibit D. For example, if a sample met the 95% confidence level with a 5% confidence interval standard, you could be 95% certain, with + or – 5% margin of error, that the sample represented what would be found in the entire population if the latter were studied. *Id.* Microsoft World Wide Service generally uses samples that produce a 90% confidence level and a + or – 7% confidence interval when conducting customer satisfaction surveys that Microsoft relies on in its business. *Id.* ¶ 6. A 95% confidence level and a 5% confidence interval would produce an

even more reliable result and would more than satisfy widely accepted statistical standards that businesses use for surveys of their customers. *Id.*

42. Microsoft determined that 378 SR's of the 23,182 SR's would need to be sampled to produce an estimate with a 95% confidence level and a 5% confidence interval of the number of reports received by Microsoft from persons in the United States between November 14, 2006 and April 14, 2009 who believed the LCD screens on their 30 GB, 80 GB, and 120 GB Zunes had cracked without "substantial impact" as defined in the Complaint. Bultman Decl. ¶ 7; Yu Decl. ¶ 6; Compl. ¶ 53.

43. Microsoft representatives reviewed every sixtieth record in the 46,516 customer call records between November 14, 2006 and April 14, 2009 that were either coded with the code Microsoft created for calls coded with the cracked screen code or that mentioned cracked screens before the cracked screen code was implemented and widely used. Bultman Decl. ¶ 8. If the sixtieth record did not relate to a 30 GB, 80 GB, or 120 GB Zune, they reviewed the next record that related to one of those devices. *Id.* Their review of SR's for 30 GB, 80 GB, and 120 GB Zunes related to whether the callers reported that the LCD screens on their Zunes had cracked with or without substantial impact, or whether the callers had not reported how the screen had cracked. *Id.*

44. Microsoft representatives reviewed customer call records that included a total of 775 SR's and found:

    a.    64 SR's stating that Microsoft had repaired or replaced the Zune at no charge,

    b.    19 SR's that were duplicates of another SR, and

-12-

        c.       28 SR's that were miscoded and did not involve a report of a cracked screen.

Bultman Decl. ¶ 9; Declaration of Blerim Kuliqi ("Kuliqi Decl.") ¶ 6; Declaration of Thomas

Sawyer ("Sawyer Decl.") ¶ 6; Declaration of Riley McTaggart ("McTaggart Decl.") ¶ 6.

Copies of the Kuliqi Declaration, Sawyer Declaration and McTaggart Declarations are

attached hereto as Exhibits E, F, and G respectively.

        45.     After removing the SR's described in paragraph 44 (a), (b) and (c)

above and disregarding those that did not identify the type of device, Microsoft

representatives found 606 SR's related to 30 GB, 80 GB, and 120 GB Zunes, and

44 SR's related to other types of Zunes.  Bultman Decl. ¶ 10; Kuliqi Decl. ¶ 7;

Sawyer Decl. ¶ 7; McTaggart Decl. ¶ 7.

        46.     As to the SR's that are described in paragraph 45 above relating to

30 GB, 80 GB, and 120 GB Zunes, Microsoft representatives found the following:

        a.       92 SR's related to LCD screens that were reported to have cracked without
                 substantial impact ("no-impact screens'),

        b.       146 SR's related to LCD screens that were reported to have cracked with
                 substantial impact ("impact screens"), and

        c.       368 SR's did not indicate whether the LCD screens had cracked due to
                 substantial impact or without substantial impact.

Bultman Decl. ¶ 11; Kuliqi Decl. ¶ 8; Sawyer Decl. ¶ 8; McTaggart Decl. ¶ 8.

        47.     Based on this review, Microsoft estimates that there are 8,354 30

GB, 80 GB, and 120 GB Zunes whose owners reported or would have reported

that their LCD screens had cracked without substantial impact if they were asked

individually. This estimate was calculated, as follows:

        a.       Microsoft estimated that of the 23,182 SR's in the database,
                 approximately 21,613 SR's relate to 30 GB, 80 GB, and 120 GB
                 Zunes.  Microsoft's review determined that of the 650 SR's that
                 identified the type of  Zune in their sample, 606 SR's, or 93.23%,

related to 30 GB, 80 GB, and 120 GB Zunes. 21,613 SR's is 93.23% of the total SR's (23,182) in the database.

b.  Microsoft determined that no-impact screens (92) represented 38.655% of the SR's reviewed relating to impact screens (146) plus no-impact screens (92).

c.  Microsoft applied the percentage calculated in paragraph 47(b) above (38.655%) to the estimated number of SR's for 30 GB, 80 GB, and 120 GB Zunes described in paragraph 47 (a) above (21,613), and estimated that 8,354 SR's related to reports for 30 GB, 80 GB, and 120 GB devices whose LCD screens would have been reported to have cracked without substantial impact if all callers could be asked individually.

Bultman Decl. ¶ 12.

48.  Microsoft's estimate of 8,354 30 GB, 80 GB, and 120 GB Zunes whose owners reported or would have reported that their LCD screens had cracked without substantial impact if they were asked individually exceeds the 6,216 Zunes necessary to be at issue (*see* paragraph 31 above) to meet the $5 million threshold for diversity jurisdiction under CAFA.

49.  Plaintiffs therefore allege an amount in controversy that exceeds $5 million exclusive of interest and costs.

## **Minimal Diversity of Citizenship**

50.  CAFA's second requirement, that any one member of the proposed class be a citizen of a state different from any defendant, 28 U.S.C. § 1332(d)(2), is also met here.  Plaintiffs each allege that they reside in New Jersey.  Compl. ¶¶ 2-5.  Plaintiffs further allege that Microsoft is a Washington corporation, Compl. ¶ 6, and Microsoft's principal place of business is One Microsoft Way, Redmond, WA.  Warren Decl. ¶ 3.  Accordingly, Microsoft is a citizen of Washington, and

diversity of citizenship exists between at least one proposed class member and Defendant, satisfying 28 U.S.C. § 1332(d)(2).

51.     The complete diversity between the named Plaintiffs and Microsoft not only satisfies the minimal diversity-of-citizenship requirement under CAFA, but also precludes the "local controversy" or "home state" exceptions in 28 U.S.C. § 1332(d)(3) and § 1332(d)(4).

## Proposed Class Size

52.     CAFA's third requirement, that the proposed class contain at least 100 members, 28 U.S.C. § 1332(d)(5), is met here as well.

53.     Microsoft estimates that 8,354 30 GB, 80 GB and 120 GB Zune owners reported to Microsoft that their LCD screens had cracked without substantial impact.

54.     Plaintiffs thus allege a potential class with at least 100 members.

55.     For all the foregoing reasons, this action is properly removed to this Court under CAFA.

Respectfully submitted,

April 29, 2009

MONTGOMERY, McCRACKEN,
  WALKER & RHOADS, LLP


By: s/ Kristen E. Polovoy
Charles B. Casper (CC-1601)
Mary F. Platt (MP-9643)
Kristen E. Polovoy (KP-4440)

*Attorneys for Defendant Microsoft
Corporation*

-16-

**MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP**
(A Limited Liability Partnership Formed in Pennsylvania)
By:     Charles B. Casper (CC-1601)
        Kristen E. Polovoy (KP-4440)
LibertyView, Suite 600
457 Haddonfield Road
Cherry Hill, NJ  08002
(856) 488-7700
ATTORNEYS FOR DEFENDANT MICROSOFT CORPORATION

---

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY
### TRENTON VICINAGE

| | | |
|---|---|---|
| JAMES R. MALONEY, MARYLEE M. MALONEY, and CATHERINE SMITH, on behalf of themselves and all others similarly situated the putative Class, | : : : : | Civil Action No. |
| Plaintiff, | : : | |
| v. | : : | |
| MICROSOFT CORPORATION, | : : | |
| Defendant. | : | |

### CERTIFICATION OF SERVICE

I, Kristen E. Polovoy, hereby certify that on the date listed below **Defendant's**

**Notice of Removal** and **Defendant's Rule 7.1 Disclosure Statement** were filed with the

Court via ECF.  I also caused true and correct copy of these documents to be served by

hand delivery, upon the following:

Henry P. Wolfe, Esquire
Galex Wolf, LLC
1520 U.S. Highway 130, Suite 101
North Brunswick, NJ  08920

                                        s/ Kristen E. Polovoy
                                        Kristen E. Polovoy

Dated:  April 29, 2009