NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| James R. MALONEY, Marylee M. MALONEY, and Catherine M. SMITH, on behalf of themselves and others similarly situated, | |
| Plaintiffs, | Civ. No. 09-2047 |
| | OPINION |
| v. | |
| MICROSOFT CORPORATION, | |
| Defendant. | |

THOMPSON, U.S.D.J.

This matter has come before the Court on Plaintiff Catherine Smith's Motion for Class Certification [docket # 40]. Defendant Microsoft Corporation ("Microsoft") has opposed this motion [48]. The Court has decided part of this motion upon the submissions of the parties and after hearing oral arguments pursuant to Fed. R. Civ. P. 78(a). For the reasons that follow, Plaintiff's motion will be denied in part and the Court reserves decision in part, subject to further briefing by the parties.

I.      BACKGROUND

The Plaintiffs in this case seek to hold Microsoft liable on a variety of theories premised on consumer fraud, breach of implied warranty, and federal Magnuson-Moss Warranty Act (MMWA) claims. This dispute arises out of the sale of a portable MP3 player called a "Zune," in particular the original 30 gigabyte ("30gb") model. Plaintiffs allege that the 30gb-model Zune was defectively made such that cracks would develop on the liquid crystal display (LCD) screen

causing the device to become inoperable through no fault of the purchaser.  Plaintiffs are seeking

class certification, with Plaintiff Catherine Smith as the proposed class representative.

Plaintiff Smith has moved for class certification pursuant to Fed. R. Civ. P. 23(a) and

23(b)(3), with the class seeking predominantly legal relief.  Alternatively, Smith have moved for

class certification pursuant to Rules 23(a) and 23(b)(2)—a class predicated on obtaining

equitable relief.  The proposed class is defined as:

> All United States resident persons who purchased or owned a Microsoft Zune
> 30gb model and whose Zune liquid crystal display screen ("LCD") cracked
> without cracking or chipping of the outer screen that covers the LCD screen
> within their applicable warranty period (one-year, unless under an extended
> warranty) and who notified Microsoft orally or in writing about the cracked LCD
> but did not receive repair or replacement of their Zune from Microsoft.

Plaintiff Smith's arguments concerning the satisfaction of the requirements of Rule 23(a) are un-

rebutted by the Defendant.  Rather, Defendant argues that Rule 23(b)—specifically, the

predominance factor, discussed *infra*—has not been satisfied.

In determining this motion there are two main issues to address.  First, will questions

concerning what the underlying cause of cracking is as to each individual LCD screen

predominate at trial?  Second, will each state's common law and consumer protection laws apply

such that individual questions of law will predominate at trial, or will Washington State and

Federal laws apply uniformly to all aggrieved consumers?  As to the second question, the Court

concludes that each state's common law and consumer protection laws apply and therefore a

nation-wide class cannot be certified.  The Court, however, will reserve decision on the first

question and it requests further briefing on this matter by the parties so that it can better

determine whether a New Jersey-wide class may be certified.

## II.   LEGAL STANDARD

### A.   *Class Certification: Predominance*

A class may be certified pursuant to Fed R. Civ. P. 23(a) when "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  In addition to these requirements, when legal relief is the predominant form of relief sought, certification is proper only if "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).[1]  These requirements are known as "predominance" and "superiority" respectively.  *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310 (3d Cir. 2008).  In this case only the predominance factor is contested.

The burden is on the plaintiff to show the requirements of Rule 23 have been satisfied. *Id.* 311–12.  "Class certification is proper only 'if the trial court is satisfied, after a rigorous analysis, that the prerequisites' of Rule 23 are met." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 309 (quoting *Gen Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).  Factual determinations made by a preponderance of the evidence are necessary as to each requirement of Rule 23, i.e., they are not merely threshold requirements.  *Id.* at 307; *see also id.* at 310 ("[A]

---

[1] When equitable relief is sought, Rule 23(b)(2) applies.  Plaintiffs argue in the alternative for class certification on the basis of equitable relief.  Rule 23(b)(2), however, "does not extend to cases in which the appropriate final relief relates exclusively or *predominantly* to money damages."  Fed. R. Civ. P. 23(b)(2) (emphasis added).  Plaintiffs seek an injunction directing that Defendant "honor the written warranty and the implied warranty of merchantability," (2d Amend. Compl., at 26–27), and "to repair or replace the affected Zunes," (*Id.*, at 27).  This relief is very similar in nature to monetary damages.  Therefore, although equitable relief is sought by the Plaintiffs, because money damages are the predominant form of relief sought, only Rule 23(b)(3) is applicable.  *See McNair v. Synapse Group, Inc.*, No. 06-5072, 2009 U.S. Dist. LEXIS 54908, *19–20 (D.N.J. June 29, 2009); *cf. Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557 (2011) (Claims for monetary relief may not be certified under Rule 23(b)(2) "where . . . the monetary relief is not incidental to the injunctive or declaratory relief.").

3

class may not be certified without a finding that each Rule 23 requirement is met."). According to the Court of Appeals for the Third Circuit, "predominance tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation, a standard far more demanding than the commonality requirement of Rule 23(a) requiring more than a common claim. Issues common to the class must predominate over individual issues." *Id.* at 311 (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 623–24 (1997); *Newton v. Merrill Lynch, Fenner & Smith, Inc.*, 259 F.3d 154, 187 (3d Cir. 2001); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 313–14 (3d Cir. 1998)) (internal quotations omitted). Therefore, if one element of a claim can be proven only by resort to individual treatment, class certification is inappropriate. *Newton*, 259 F.3d at 172. Proof of each element of a claim is not required, but plaintiffs "must demonstrate that [each] element of [the cause of action] is capable of proof at trial through evidence that is common to the class rather than individual to its members." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 311–12.

    B.  *Choice-of-Law*

    Defendants argue in opposition to the pending motion that each State's common law and consumer protection laws will apply to the proposed class, and thus individual questions of law would predominate at trial.

    Under Rule 23(b), a class should be certified only if "questions of law . . . common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b). To make this determination, "the Court must look at each claim upon which plaintiffs seek recovery and identify the law that applies to the claim." *Elias v. Ungar's Food Prods., Inc.*, 252 F.R.D. 233, 246 (D.N.J. 2008) (citing *Dal Ponte v. Am. Mortg. Express Corp.*, No. 04-2152, 2006 U.S. Dist. LEXIS 57675, at *5 (D.N.J. 2006); *Sczcubelek v. Cendant Mortg. Corp.*, 215

F.R.D. 107, 120 (D.N.J. 2003).  Next, the Court "must determine whether proving the elements

of the plaintiff's claim can be done through common questions or whether the proof will be

overwhelmed with individual issues."  *Id.* (citing *Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206, 210

(E.D. Pa. 2000)).

According to the Court of Appeals for the Third Circuit, "attempts to structure and certify

nationwide classes involving plaintiffs in all fifty states often turn on whether the law of a single

state or multiple states should be applied."  *Powers v. Lycoming Engines*, 328 F. App'x 121, 124

(3d Cir. 2009).  If all 50 states' laws apply to a class-action claim, the moving party must provide

an "extensive analysis" of state law variances showing "that class certification does not present

insuperable obstacles."  *In re Sch. Asbestos Litig.*, 789 F.2d 996, 1010 (3d Cir. 1986).  Plaintiffs

bear this burden at the class certification stage.  *Chin*, 182 F.R.D. at 458.  Therefore, a choice-of-

law analysis should be done first, followed by a determination of whether class certification

would still be appropriate in the case in which all 50 states' laws apply.

District courts apply the choice-of-law rules of the state in which they sit.  *See, e.g., Berg

Chilling Sys, Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006).  New Jersey courts have

adopted the "most significant relationship" test of the Restatement (Second) of Conflicts of Law.

*See P.V. v. Camp Jaycee*, 962 A.2d 453, 460 (N.J. 2008); *see also Payne,* 2010 U.S. Dist. LEXIS

52808, at *18–19.  "Under this standard, the law of the state of the injury is applicable unless

another state has a more significant relationship to the parties and issues."  *Camp Jaycee*, 962

A.2d at 460.  The first step in this analysis is to determine whether a conflict exists.  *Id.*  If a

conflict is established, the law of the state where the injury occurred is presumptively applicable

in tort cases.  *Id.* at 461.  If no presumption applies, a court should then weigh the factors

contained in the Second Restatement regarding each type of claim raised by the Plaintiff.

Restatement (Second) § 148 governs consumer fraud claims.  Under this standard, courts should consider:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations; (b) the place where the plaintiff received the representations; (c) the place where the defendant made the representations;  (d) the domicile, residence, nationality, place of incorporation and place of business of the parties; (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time; and (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) of Conflicts of Law § 148(2).  Restatement (Second) § 188 sets out factors to consider when determining the applicable law in a contract dispute, including a dispute over warranties: "(a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties."  Restatement (Second) of Conflicts of Law § 188(2).

Lastly, the considerations of Restatement (Second) § 6 should be taken into account in order to determine what weight different factors should be given.  *Camp Jaycee*, 962 A.2d at 463.  "Reduced to their essence, the Section 6 principles are: (1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; and (5) the competing interests of the states."  *Id.* (quoting *Erny v. Estate of Merola*, 792 A.2d 1208, 1217 (N.J. 2002)).

III.     EXPRESS WARRANTY CHOICE OF LAW PROVISION

The Plaintiffs in this case argue that the choice-of-law provision contained in the Zune warranty should apply to all claims.  The warranty states in relevant part as follows:

A.  WARRANTIES.

6

1. 1 Year Express Warrant.  Subject to the terms and conditions of this Limited Warranty, Microsoft warrants to you only (the original purchaser), that under normal use and service, the Zune Product will substantially conform with the accompanying printed user instruction materials for a period of 1 year starting as of the date of the sales receipt (the "Warranty Period").

2. Implied Warranty.  You may also have an implied warranty and/or condition under the laws of some jurisdictions, which is hereby limited to the duration of the Warranty Period.  Some jurisdictions do not allow limitations on how long an implied warranty or condition lasts, so the foregoing limitations may not apply to you.
. . .

F.   EXCLUSION OF CONSEQUENTIAL, INCIDENTAL AND CERTAIN OTHER DAMAGES and LIMITATION OF LIABILITY. TO THE FULL EXTENT ALLOWED BY LAW, MICROSOFT IS NOT LIABLE FOR ANY: …

1. CONSEQUENTIAL OR INCIDENTAL DAMAGES;

2. DAMAGES OR LOSS WHATSOEVER RELATING TO . . . ANY FAILURE TO MEET ANY DUTY INCLUDING BUT NOT LIMITED TO ANY LACK OF NEGLIGENCE OR WORKMANLIKE EFFORT; OR

3. INDIRECT, SPECIAL, OR PUNITIVE DAMAGES ARISING OUT OF OR RELATING IN ANY WAY TO THE ZUNE PRODUCT

THE FOREGOING APPLIES EVEN . . . IN THE EVENT OF FAULT, TORT (INCLUDING NEGLIGENCE), . . . MISREPRESENTATION OR OTHER REASON. . . .  Some jurisdictions do not allow the exclusion or limitation of incidental or consequential damages, so the above limitations or exclusions may not apply to you.
. . .

H.   GOVERNING LAW.  This Limited Warranty is valid only in the United States of America.  The laws of the State of Washington, U.S.A. will apply to this Limited Warranty.

(2d Am. Compl., Ex. G ¶¶ A, F, H at 11, 15, 16) [29].  Defendant argues that the express

warranty choice-of-law provision should not apply to Plaintiffs' implied-warranty and MMWA

claims based on a textual reading of the express warranty.  Moreover, Defendant argues, this

governing-law clause should not apply to the consumer-fraud claims because tort liability is not

specifically mentioned as being covered under the express warranty.  Therefore, according to the

Defendant, the Court must resort to New Jersey's "most significant relationship" test.  Under this

test, the Defendant posits, the law of each class member's home state should apply to each claim,

which in turn prevents class certification.

IV.     DISCUSSION

        A.     *Application of the Limited Warranty Choice-of-Law Clause*

Plaintiffs contend that the choice-of-law clause contained in the limited warranty should

apply to all of its claims against Microsoft.  For the reasons that follow, however, the choice-of-

law provision does not apply to any of Plaintiffs' claims.

        1.   *Implied-Warranty and Federal MMWA Claims*

First, the implied-warranty claims asserted by the Plaintiffs are not governed by the

choice-of-law provision in the express warranty.  As a plain reading of the text of the express

warranty above makes clear, the choice-of-law provision applies only to the "Limited Warranty,"

i.e., the express warranty.  Moreover, other provisions indicate that the express warranty

contemplated applying differing state laws to claims outside the specific terms of the Limited

Warranty.  An illustrative case is *Laney v. Am. Std. Cos.*, No. 07-3991, 2010 U.S. Dist. LEXIS

100129 (D.N.J. Sept. 23, 2010).  In that case, the express warranty at issue stated, "Some states

or provinces do not allow the exclusion or limitation of implied warranties, so this exclusion may

not apply to you."  *Id.* at *70.  In the court's eyes, this meant that the Defendant "expected the

laws of the consumers' states to apply, and gives some notice to consumers of this proposition."

*Id.*; *see also Cali v. Chrysler Grp. LLC*, No. 10-7606, 2011 U.S. Dist. LEXIS, *7–10 (S.D.N.Y.

Jan. 18, 2011).  This case is no different.  The express warranty supplied by Microsoft puts Zune

purchasers on notice that they "may also have an implied warranty and/or condition under the

laws of some jurisdictions" and that "[s]ome jurisdictions do not allow limitations on how long an implied warranty or condition lasts, so the foregoing limitations may not apply to you."  (2d Am. Compl., Ex. G ¶ A, at 11).  The choice-of-law provision in this case is simply inapplicable to claims arising outside of this express warranty, and thus this provision does not apply to implied-warranty claims.

Despite a plain reading of the express warranty, Plaintiffs attempt to structure their implied-warranty claims into the choice-of-law clause by conflating their implied-warranty and MMWA claims.  Although Plaintiffs' have not clearly defined their exact argument, they appear to argue as follows: (1) that their federal MMWA claims are based on a violation of the implied warranty of merchantability; (2) that the MMWA provides further substantive law to apply in this case; (3) that this federal law is applied uniformly to all proposed class members regardless of state implied-warranty laws; (4) that these substantive provisions of the MMWA have been violated in the express warranty; and (5) that this therefore means that the implied-warranty claims must also fall under the express warranty and its choice-of-law provision.  Although the law in this area is sparse, Plaintiffs' argument is untenable because ultimately Plaintiffs' MMWA claims rely on their implied-warranty claims, not violations of federal law.  *See Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1016 (D.C. Cir. 1986) ("[S]tate warranty law lies at the base of all warranty claims under Magnuson-Moss.").  Plaintiffs wrongfully confuse substantive MMWA violations and the right to recover under the MMWA.

Plaintiff Smith contends that federal law uniformly governs the MMWA claims in this case.  During oral arguments on this matter, Plaintiffs' counsel pointed the Court's attention to paragraph 3 of the Amended Complaint [29].  There the Plaintiffs allege that their MMWA claims revolve around, in part, "Microsoft's failure to properly disclose the exclusions under

9

which Microsoft denied warranty coverage to Plaintiffs . . . [and] for Microsoft's attempt to disclaim or modify the implied warranty of merchantability in the written warranty for the Zune." (2d Amend. Compl. ¶ 3). Defendant argues that the claims brought under the MMWA must be dismissed because they rely on state warranty claims. *See* 15 U.S.C. § 2301(7) (2006) (defining "implied warranty" as "an implied warranty arising under State law"); *see also Payne*, 2010 Dist. LEXIS 52808, at *28. Plaintiffs counter that MMWA does not require the application of state law when there is a particular instance in which MMWA specifically prescribes a regulating rule. (Pl.'s Reply Br. at 12). Plaintiffs then point to 15 U.S.C. § 2308(a) as one such rule, which prohibits the disclaimer of implied warranties when an express warranty is given. 15 U.S.C. § 2308(a).

Although Plaintiffs are correct in arguing that federal substantive law—and not state law—prevents Microsoft from disclaiming implied warranties, Plaintiffs' ultimate right to recover on their MMWA claims still depends on state law. When a Defendant improperly disclaims an implied warranty, the MMWA provides a statutory remedy: "A disclaimer, modification, or limitation made in violation of this section shall be ineffective for purposes of this chapter and State law." 15 U.S.C. § 2308(c). Therefore, as one court in the Northern District of Georgia has stated, "if defendant did in fact try to disclaim any implied warranties, such disclaimer would be void and *plaintiffs would be able to proceed against defendant on breach of implied warranties claims*." *Gilbert v. Monaco Coach Corp.*, 352 F. Supp. 2d 1323, 1330 (N.D. Ga. 2004) (emphasis added); *see also Voelkel v. G.M.C.*, 846 F. Supp. 1468, 1474 n.2 (D. Kan. 1994) ("[I]f the purported disclaimers and limitations are ineffective by reason of the MMWA then *the consumer may recover whatever state law allows* . . . .") (emphasis added) (broadly discussing legislative intent).

Plaintiffs' other contention—i.e., that Microsoft's failure to disclose the exclusion of LCD damage in the express warranty requires the application of the choice-of-law clause to implied-warranty claims—must fail as well.  Pursuant to 15 U.S.C. § 2302(a)(6), and the rules promulgated thereunder by the Federal Trade Commission, a warrantor is required to provide "a clear description and identification of products, or parts, or characteristics, or components or properties covered by and *where necessary for clarification, excluded from the warranty*." 16 C.F.R. § 701.3(a)(2) (emphasis added).  However, similar to the substantive violation for improperly disclaiming an implied warranty, the remedy for violating this disclosure requirement should be to nullify any purported effect of what was not disclosed.  In other words, failure to disclose an exclusion from the warranty should prevent a party from later arguing that a component of the warranted consumer good—in this case the LCD screen—was not subject to the warranty.

The argument presented by the Plaintiffs appears novel, and there are no cases that the parties have cited to or that the Court has found directly addressing the remedies available for violating the exclusion disclosure requirements discussed above.  The Court, however, finds a case from the Court of Appeals for the Eleventh Circuit instructive on this matter.  In *Cunningham v. Fleetwood Homes of Ga., Inc.*, 253 F.3d 611 (11th Cir. 2001), the court held that an arbitration clause that was not disclosed in the written warranty as required by the MMWA could not be enforced against the warranty claims raised by the plaintiff.  *Id.* at 620–24.[2]  The failure to properly disclose the arbitration clause did not provide a separate right to recover apart from the underlying breach of warranty claims, it merely prevented application of the

---

[2] The holding of this case was severally restricted in a later case decided by the Eleventh Circuit, which held that binding arbitration was not an informal dispute process under the MMWA.  *Davis v. S. Energy Homes, Inc.*, 305 F.3d 1268, 1276 (11th Cir.2002).  This, however, does not undermine the reasoning of the portion of the *Cunningham* court's decision that this Court finds persuasive.

undisclosed arbitration provision.  That same reasoning applied to the facts of this case posits

that failure to disclose an exception to a written or implied warranty as required under the

MMWA should prevent the application of that undisclosed exception.

It appears that no case has ever held that a substantive violation of the MMWA provides

for a separate right to recover apart from the underlying breach of warranty claims.  Instead, any

cause of action under the MMWA must rely on those underlying claims regardless of whether

the substantive portions of MMWA were violated.[3]  *See generally Walsh v. Ford Motor Co.*, 807

F.2d 1000, 1016 (D.C. Cir. 1986) ("[I]f Congress intended displacement of state law beyond the

Act's explicit prescriptions, one would expect to find a clear statement to that effect."); *see also*

*Meserole v. Sony Corp. of Am.*, No. 08-8987, 2009 U.S. Dist. LEXIS 42772, *32 (S.D.N.Y. May

19, 2009) (citing *Diaz v. Paragon Motors of Woodside*, 424 F. Supp. 2d 519, 540 (E.D.N.Y.

2006)) ("The MMWA does not, however, create additional bases for recovery under federal law,

but rather allows a consumer to recover damage under existing state law.").  In this case,

Plaintiffs have contended only that consumer fraud statutes and the implied warranty of

merchantability were violated; all of Plaintiffs' substantive MMWA claims are incidental to

these underlying violations.  *See Demorato v. Carver Boat Corp.*, 304 F. App'x 100, 104 (3d Cir.

2008) ("The District Court correctly held that [the plaintiffs] have no federal cause of action for

breach of implied warranty under the Magnuson-Moss Act, 15 U.S.C. § 2301 *et seq.*, because

that Act provides a remedy only for a breach of an implied warranty arising under state law.").

---

[3] This is shown by other provisions of the MMWA.  For example, 15 U.S.C. § 2310(d)(3)(B) provides for a
minimum amount in controversy requirement of $50,000.  One would not expect to find such a requirement if there
were independent federal rights upon which a litigant could recover.  *See Samuel-Basset v. Kia Motors Am., Inc.*,
357 F.3d 392, 402 (3d Cir. 2004) ("[F]ederal jurisdiction for a Magnuson-Moss Act claim does not exist unless the
amount in controversy exceeds $ 50,000.").  Another example is 15 U.S.C. § 2311(b)(2)(A), which states that
"[n]othing in [the MMWA] . . . shall . . . impose liability on, any person for personal injury."  This indicates that
Congress did not intend to expand federal causes of action beyond the underlying state breach-of-warranty claims.

As such, the choice-of-law provision contained in the express warranty does not apply to Plaintiffs' MMWA or implied-warranty claims.[4]

### 2. *Consumer-Fraud Claims*

Lastly, the choice-of-law provision contained in the limited warranty does not apply to Plaintiffs' consumer-fraud claims.  Under Washington State law, "a choice of law provision in a contract does not govern tort claims arising out of the contract." *Haberman v. Wash. Power Pub. Supply Sys.*, 744 P.2d 1032, 1066 (Wash. 1987).  As recently as this year, a district court sitting in the Western District of Washington refused to apply a choice-of-law clause to consumer-fraud claims arising out of a contract when tort claims were not specifically mentioned in the language of the contract.  *See Carideo v. Dell, Inc.*, 706 F. Supp. 2d 1122, 1126–28 (W.D. Wash. 2010). In this case, the express warranty goes beyond simply not mentioning tort liability, but in fact it specifically excludes this type of liability from its terms.  (2d Am. Compl., Ex. G ¶ F at 15). Therefore, the choice-of-law rules of the State of New Jersey, and not the Washington State choice-of-law clause, should determine what consumer fraud laws to apply.

### B. *New Jersey Choice of Law Analysis*

Having determined that the choice-of-law provision in the limited warranty does not apply to any of the Plaintiffs' claims, the Court must next apply the choice-of-law rules of the State of New Jersey.  *See Berg Chilling Systems, Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006).

---

[4] Even if this Court were to somehow reach the opposite conclusion, it appears questionable whether Plaintiff Smith even has standing to represent the class on the basis of this argument.  Plaintiff Smith received her 30gb-model Zune as a gift, *see* (Pls.' Br. at 12), but the express warranty "applies to the original purchaser only and may not be assigned or transferred," (2d Am. Compl., Ex. G ¶ G at 16).  However, because the issue was not briefed by the parties and because the Court finds that the choice-of-law provision does not apply to the implied-warranty and MMWA claims, this issue need not be decided.

### 1. Does a Conflict Exist?

The first step in a choice-of-law analysis under New Jersey law is determining whether a conflict between state implied-warranty and consumer-fraud laws exists. *See Camp Jaycee*, 962 A.2d at 460.

Many courts have recognized that state implied-warranty laws differ in significant and material ways. The court in *Payne*, for example, found that there are at least nine differences that occur between states: (1) application of the parole evidence rule; (2) burdens of proof; (3) statute of limitations; (4) whether plaintiffs must demonstrate reliance; (5) whether plaintiffs must provide notice of breach; (6) whether there must be privity of contract; (7) whether plaintiffs can recover for unmanifested defects; (8) whether merchantability may be presumed; and (9) whether warranty protections extend to used goods. *Payne*, 2010 Dist. LEXIS 52808, at *27. Therefore, the Court finds that a choice-of-law analysis is necessary as to Plaintiffs' implied-warranty and MMWA claims.

Similarly, there are clear differences between consumer fraud statutes among states. A number of differences have been identified by the New Jersey Appellate Division:

> New Jersey allows and often encourages private class actions for consumer fraud while several other states prohibit private class action consumer fraud suits. NJ law finds actionable fraud in connection with the sale of goods or services for commercial or business uses, whereas some states confine their consumer fraud statute remedies to items purchased primarily for personal, family or household purposes. Some states require proof that the defendant willfully or knowingly made false representations with specific intent to deceive, while New Jersey does not require such a showing. Furthermore, variations exist in the award of damages, especially the decision or ability of a court to award punitive or treble damages.

*Int'l Union of Operating Eng'rs Local # 68 Welfare Fund v. Merck & Co.*, 894 A.2d 1136, 1146–47 (N.J. App. Div. 2006) (internal citations and quotations omitted); *see also Agostino v. Question Diagnostics, Inc.*, 256 F.R.D. 437, 462 (2009) [hereinafter *Agostino I*] (noting

differences in the proof of ascertainable loss required across jurisdictions' consumer fraud

statutes).  Therefore, a choice-of-law analysis is required as to Plaintiff's consumer-fraud claims

as well.

### 2.  *Implied-Warranty and MMWA Claims*

The next step in this Court's analysis is to weigh all of the Restatement factors regarding

Plaintiff's implied-warranty and MMWA claims.  *Camp Jaycee*, 962 A.2d at 461–62.

Considering all of the Restatement § 188 factors, discussed *supra*, the state with the most

significant relationship to the implied-warranty claims is each class member's home state.

First, the place of contracting occurred wherever each class member purchased their 30gb

Zune, which is presumably in their home state.  Second, there was no negotiation of the implied

warranties.  Third, the place of performance also occurred wherever each class member

purchased their 30gb Zune.  Fourth, the location of the subject matter of the implied warranties is

wherever the Zune was physically located, also presumably in each class member's home state.

Finally, the domicile of the plaintiffs varies between each class member, and the Defendant's

domicile is in the State of Washington (and possibly one additional state).  Weighing these

considerations, the state with the most significant relationship to the implied warranty claims—

and consequently, the MMWA claims—is each class members' home state.  Nothing contained

in the § 6 factors undermines this determination.  This decision is in accord with great weight of

other court decisions in this district.  *See, e.g., Payne*, 2010 Dist. LEXIS 52808; *Chin*, 182

F.R.D. at 456; *Agostino I*, 256 F.R.D. at 463.

### 3.  *Consumer Fraud*

Similar to the Plaintiffs' implied-warranty and MMWA claims, Plaintiffs' consumer-

fraud claims should also be governed by the laws of each class member's home state.  Although

there is a slight split in this district, the vast majority of decisions have found that the laws of each class member's home state should control consumer-fraud claims. Ultimately, this determination is fact specific.

The leading case in which it was held that the laws of the domicile of the Defendant corporation had the most significant relationship in a consumer-fraud class action is *In re Mercedes Benz Tele Aid Contract Litig.*, 257 F.R.D. 46 (D.N.J. 2009). In that case, the court determined that the third § 148(2) factor—the place where the Defendant made the representations—was the most important consideration. *Id.* at 67–68. There were two reasons for this according to the court. First, the New Jersey consumer fraud statute at issue sought to deter wrongful conduct on the part of corporations headquartered within its borders by imposing treble damages. *Id.* at 68. According to the court, "This deterrent effect would be compromised if [the Defendant] were allowed to avail itself of the law of states which limit recovery in consumer fraud actions to compensatory damages simply because its alleged wrongful activity, which took place within New Jersey, had nationwide effects." *Id.* Second, the State of New Jersey had an interest in protecting corporations in its border from excessive penalties. This interest would be compromised by subjecting in-state corporations to the laws of other jurisdictions that do not limit punitive damages. *Id.*

The justifications provided by the court in *Mercedes Benz* were specifically rejected by the another court in this district in *Agostino v. Quest Diagnostics, Inc.*, No. 04-4362, 2010 U.S. Dist. LEXIS 135310 (D.N.J. Dec. 22, 2010) [hereinafter *Agostino II*]. There, the court stated that it was "not satisfied that New Jersey's interest in deterring certain conduct by its home state businesses, as reflected in the enactment of the Consumer Fraud Act, warrants a practically willy-nilly imposition of New Jersey's law nationwide in disregard of the laws of other

jurisdictions and the potential consequences of that blanket application of one state's laws to individual claimants." *Id.* at *29. This Court is similarly unsatisfied with the justifications provided in the *Mercedes Benz* decision. This is in accordance with the great weight of case law in this jurisdiction on this matter. For example, in *Arlandson v. Hartz Mt. Corp.*, No. 10-1050, 2011 U.S. Dist. LEXIS 56462 (D.N.J. May 26, 2011), the court held that despite the fact that the company was headquartered in New Jersey and assuming that the alleged misrepresentations were made in New Jersey, these facts did not prevent the application of all 50 states' laws because Plaintiffs received and relied on the misrepresentations in their home states, the product was located in the Plaintiffs' home states, and the contract was performed in the Plaintiffs' home states. *Id.* at *42–43 (collecting cases). Nearly every case in this district has followed this same reasoning, and the Court will follow this reasoning as well. Plaintiffs have pointed to no cases, nor have has the Court been able to find any cases, that purport to follow the opinion in *Mercedes Benz*.

In this case, factors (a), (b), (e), and (f) of Restatement § 148(2)—i.e., the place, or places, where the plaintiff acted in reliance upon the defendant's representations; the place where the plaintiff received the representations; the place where a tangible thing which is the subject of the transaction between the parties was situated at the time; and the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant—all weigh in favor of applying the consumer fraud laws of each class member's home state. Factor (d) on the other hand—i.e., the domicile, residence, nationality, place of incorporation and place of business of the parties—is neutral because this will vary as between each class member and the Defendant. Lastly, assuming, but without deciding, that factor (c)—i.e., the place where the defendant made the representations—weighs

in favor of applying the consumer fraud statute of the State of Washington, this is not enough to

overcome these other countervailing factors.  None of the considerations inherent in § 6 of the

Restatement change this determination.  Judge Chesler in *Agostino I* put it succinctly:

> The interests of interstate comity clearly favor the application of the law of
> each prospective class member's state of residence. Second, the interests of the
> parties is of extreme importance in the field of contracts, but it plays little or no
> part in a choice-of-law question in the field of torts.  Third, because each
> plaintiff's home state has an interest in protecting its consumers from in-state
> injuries caused by foreign corporations and in delineating the scope of recovery
> for its citizens under its own laws, the competing interests of the states overlaps
> with the interests underlying consumer protection law and favors applying the 51
> state consumer fraud statutes.  The fifth factor does not alter the Court's analysis
> because the New Jersey Supreme Court has found that the interests of judicial
> administration factor must yield to strong interests implicated by the
> remaining factors.

*Id.* at 463 (internal citations and quotations omitted).  Thus, the laws of all 50 states should apply

to the Plaintiffs' consumer-fraud claims.

## V.   CONCLUSION

In light of this Court's determination that the laws of all 50 states apply to Plaintiffs'

claims and because Plaintiffs have suggested no workable means by which to conduct a

manageable trial—let alone the "extensive analysis" required of them, *see In re Sch. Asbestos

Litig.*, 789 F.2d at 1010—class certification is denied on a nation-wide basis because individual

questions of law will predominate.  An appropriate Order will follow.

The Court reserves decision as to whether or not a New Jersey-wide class may be

certified subject to further briefing by the parties in accordance with this Court's forthcoming

Order.  The Court is concerned that several important issues have not been adequately addressed

by the parties in their initial briefs.  Among the issues that need further clarification is what role

statistical evidence can or should play in the broader context of both parties' arguments, whether

each of Plaintiffs' four suggested proofs can individually and specifically rule out the need to

resort to individualized evidence, whether there is class-wide proof to rebut Defendant's individualized defenses, and, perhaps most importantly, whether a clear showing can be made that the alleged design defect manifested itself in a uniform manner throughout all affected Zunes in such a way that one could infer that it was a result of a design defect.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.

Dated: November 21, 2011