NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| James R. MALONEY, Marylee M. MALONEY, and Catherine M. SMITH, on behalf of themselves and others similarly situated, | Civ. No. 09-2047 |
| Plaintiffs, | OPINION |
| v. | |
| MICROSOFT CORPORATION, | |
| Defendant. | |

THOMPSON, U.S.D.J.

This matter has come before the Court on Plaintiff Catherine Smith's Motion for Class Certification [docket # 40]. Defendant Microsoft Corporation ("Microsoft") opposes this motion [48, 70]. On November 21, 2011, this Court decided a portion of Plaintiff's pending motion: the Court denied Plaintiff's request for certification of a nation-wide class and it reserved decision on the issue of whether a New Jersey-wide class could be certified pending further briefing of the parties. (Order of Nov. 21, 2011) [67]. This additional briefing is now complete, and the Court has finished deciding this motion upon all of the submissions of the parties. For the following reasons, certification of a New Jersey-wide class will be denied.

**I.      BACKGROUND**

The Court assumes the parties' familiarity with the underlying facts of this case. Plaintiff has proposed certification of a class defined as:

> All United States [or, alternatively, all New Jersey] resident persons who purchased or owned a Microsoft Zune 30gb model and whose Zune liquid crystal display screen ("LCD") cracked without cracking or chipping of the outer screen that covers the LCD screen within their applicable warranty period (one-year,

1

> unless under an extended warranty) and who notified Microsoft orally or in writing about the cracked LCD but did not receive repair or replacement of their Zune from Microsoft.

(Pl.'s Br. 1). Plaintiff's proposed nation-wide class was rejected by the Court because it determined that individual questions of law would predominate at trial based upon the required application of all fifty states' consumer protection laws. (Op. of Nov. 21, 2011, at 13–18). Now the Court must determine whether certification on a New Jersey-wide basis is appropriate.

In its initial opposition brief, Defendant argued that Plaintiff has no unifying theory of causation capable of class-wide proof and that individual questions of fact would therefore predominate at trial. Because of this, Defendant contends, even state-wide class certification would be inappropriate under Fed. R. Civ. P. 23(b)(3). Plaintiff, on the other hand, argues that causation can be established on a class-wide basis because class members' LCD screens: (1) fractured "without external damage to the outer lens"; (2) fractured "in locations that are disproportionately clustered around four identified internal design defects"; and (3) "were 20 times more likely to crack without external damage than were LCD screens on the later-model 80GB Zune, which corrected the 30 GB's worst design flaws." (Pls.' Supp. Br. 2).

## II.   LEGAL STANDARD

A class may be certified pursuant to Fed R. Civ. P. 23(a) when "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). In addition to these requirements, when legal relief is the predominant form of relief sought, certification is proper only where "questions of law or fact common to class members predominate over any questions affecting only individual members, and [where] a class action is superior to other available methods for fairly

2

and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are known as "predominance" and "superiority" respectively. *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310 (3d Cir. 2008). In this case only the predominance factor is contested.

The burden is on the plaintiff to prove the requirements of Rule 23 have been satisfied. *Id.* at 311–12. "Class certification is proper only 'if the trial court is satisfied, after a rigorous analysis, that the prerequisites' of Rule 23 are met." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 309 (quoting *Gen Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). Factual determinations made by a preponderance of the evidence are necessary as to each requirement of Rule 23, i.e., they are not merely threshold pleading requirements. *Id.* at 307; *see also id.* at 310 ("[A] class may not be certified without a finding that each Rule 23 requirement is met."). According to the United States Court of Appeals for the Third Circuit, "predominance tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation, a standard far more demanding than the commonality requirement of Rule 23(a) requiring more than a common claim. Issues common to the class must predominate over individual issues." *Id.* at 311 (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 623–24 (1997); *Newton v. Merrill Lynch, Fenner & Smith, Inc.*, 259 F.3d 154, 187 (3d Cir. 2001); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 313–14 (3d Cir. 1998)) (internal quotation marks omitted). Therefore, if one element of a claim can be proven only by resort to individual treatment, class certification is inappropriate. *Newton*, 259 F.3d at 172. Proof of each element of a claim is not required, but plaintiffs seeking class certification "must demonstrate that [each] element of [the cause of action] is capable of proof at trial through evidence that is common to the class rather than individual to its members." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 311–12.

3

### III.   ANALYSIS

a.   Causation

In this case, Plaintiff points to five specific errors in the design of the 30gb-model Zune. These include: (1) "the placement of hard internal electronic components in close proximity to the LCD screen, causing local impact"; (2) "segmented design of internal parts permitting local bending"; (3) "placement of heavy components so as to cause bending and differential stresses"; (4) "selection of materials resulting in high stresses in the LCD glass from modulus mismatch"; and (5) "modulus mismatch of components causing elevated stresses in the LCD glass."  (Cucker Cert., Ex. G at 1) [42-3].  Plaintiff then points to three pieces of evidence that are purportedly common proof that these alleged design defects caused each proposed class member's injury: (1) proposed class members' LCD screens fractured without external damage to the outer lens covering the LCD screen; (2) these LCD screen fractures were "disproportionately clustered around four identified internal design defects"; and (3) 30gb model Zunes "were 20 times more likely to crack without external damage than were LCD screens on the later-model 80GB Zune." (*Id.* 2).  These purported proofs, however, fail to establish that any of the five alleged design defects caused class members' injuries because this evidence suffers from what the United States Supreme Court has termed a "failure of inference."  *Wal-Mart Stores, Inc. v. Dukes*, --- U.S. ---, 131 S. Ct. 2541, 2555 (2011).

To begin, any factual dispute concerning whether causation is capable of proof at trial through common evidence must be determined by the Court.  *See In re Hydrogen Peroxide*, 552 F.3d at 307.  This requires the "weighing [of] conflicting expert testimony," and the Court must "[r]esolve expert disputes in order to determine whether [the predominance] requirement has been met."  *Id.* at 323–24.  The Court must engage in this analysis even if it overlaps with the merits.  *Id.* at 317–18.  However, "[t]he Court's role is not to determine which side will prevail

on the merits, but [only] to determine if the putative class could prevail on the merits using common proofs." *Marcus v. BMW of N.A., LLC*, No. 08-5859, 2010 U.S. Dist. LEXIS 122908, at *30–31 (D.N.J. Nov. 19, 2010).

Although "[p]redominance is a test readily met in certain cases[,] . . . it does not follow that a court should relax its certification analysis, or presume a requirement for certification is met . . . ." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 321–22 (internal quotations omitted); *see also Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("[A]ctual, not presumed, conformance with Rule 23(a) remains . . . indispensable."). Even though

> a plaintiff cannot frame his case in a way to avoid individualized evidence simply for the purpose of satisfying the predominance requirement, . . . a defendant should not be able to point to evidence that possibly could be admitted for the purpose of defeating certification where a plaintiff proposes a reasonable theory of a claim that overwhelmingly presents common questions, and the individualized evidence is unlikely to form the basis of the defendant's case.

*Demmick v. Cellco P'ship*, No. 06-2163, 2010 U.S. Dist. LEXIS 94041, at *35–36 (D.N.J. Sept. 8, 2010).  In other words, the practical considerations underlying the presentation of a case at trial should be considered by the Court in determining whether individual questions of fact would predominate.  In the context of proving the element of causation, numerous courts have held that individualized questions of fact prevent class certification where resort to case-by-case testimony would be necessary.  *See, e.g.*, *McNair v. Synapse Group, Inc.*, No. 06-5072, 2009 U.S. Dist. LEXIS 54908, *25 (D.N.J. June 29, 2009); *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 194 F.R.D. 484 (D.N.J. 2000) [hereinafter *Ford Ignition*]; *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 455 (D.N.J. 1998).  In the context of consumer fraud, for example, class certification is inappropriate where oral representations are made to each class member and where plaintiffs must rely on this evidence to prove causation.  *Demmick*, 2010 U.S. Dist. LEXIS 94041, at *40 (citing *Johnston v. HBO Film Mgmt.*, 265 F.3d 178, 185–86, 190 (3d Cir. 2001);

5

*In re LifeUSA Holding, Inc.*, 242 F.3d 136, 147 (3d Cir. 2001)).  This is because each oral communication will inherently be different from others based on the questions asked by the consumer, the consumer's reaction to statements heard, and so on.

Plaintiff admits that she is not entitled to a presumption of causation in this case and that she bears the burden of proof to establish a unifying theory of causation capable of class-wide proof at the class certification stage.  (Pl.'s Supp. Br. 8).  Plaintiff claims to have satisfied this burden by presenting the three above-mentioned pieces of evidence.  However, a jury must be able to independently weigh whether each alleged design defect actually existed and whether that specific defect is the cause of each class-member's injury.  Accordingly, the Defendant must have the opportunity to defend against each of these alleged defects.  Plaintiff's purported class-wide evidence, however, does not permit the Defendant to do so.

In the landmark Supreme Court case *Wal-Mart Stores, Inc. v. Dukes*, the Court examined the statistical evidence proffered by the Plaintiffs in seeking class certification.  First, the Court discussed an expert report concluding that there existed statistically significant disparities between men and women when it came to promotions and pay.  *Dukes*, 131 S. Ct. at 2555.  The Court concluded that, "[e]ven if . . . taken at face value, the studies are insufficient to establish that respondents' theory can be proved on a classwide basis."  *Id.*  The Court reasoned that disparities at the regional or national levels could not establish disparities at the individual level of each store.  *Id.* (citation omitted).  Moreover, even if this statistical evidence could establish pay and promotion patterns in each individual store—which the Court stated it did not—this was insufficient to rebut individualized defenses.  *Id.*  The Court similarly rejected the use of anecdotal evidence as too weak to raise an inference that all individual personnel decisions were discriminatory.  *Id.* at 2556.

Although the Court is aware that the majority opinion in *Dukes* rejected the dissent's characterization of this analysis as conflating Rule 23(a)'s commonality requirement (to which this analysis applied in that case) with Rule 23(b)(3)'s predominance requirement, *see id.*, the Court believes that much of this analysis is applicable here. A look at the specific facts of this case shows why.

As an initial matter, the Court largely agrees with Defendant's characterization of Plaintiff's proffered evidence as being merely the "Plaintiff's lawyers' comparison." Plaintiff's expert, Professor Greenhut, conducted no statistical analysis. (*See* Casper Cert., Ex. C [70-4], Greenhut Dep. at 37:20–38:17). Therefore, it is impossible to tell from Plaintiff's proffered evidence whether any of the numbers put forward are statistically significant. This calls into question whether Plaintiff's evidence meets the *Daubert* standard for admissibility on the issue of causation, and in turn, this calls into question whether the Court should rely on this in deciding a motion for class certification. *See Dukes*, 131 S. Ct. at 2553–54. The Court, however, need not address that question at this time because, even accepting that Plaintiff's evidence is admissible under *Daubert*, it cannot establish causation on a class-wide basis.

Plaintiff has not put forth any evidence that a jury could rely upon in determining which alleged design defect led to which Zune failure or which grouping of Zune failures. As framed by the Plaintiff, the LCD cracks covered under the proposed class result from a muddled mix of causes and effects. There is no indication that each purported cause led to a uniform result (e.g., an origination point in the same location), which would permit the Court or a jury to draw an inference of a design defect. *See Ford Ignition*, 194 F.R.D. at 490, n.4  Thus, there is no way to determine which of these five purported causes or which grouping of these causes led to which individual LCD crack or group of LCD cracks.

According to Plaintiff's own expert, "One of the most basic concepts of failure analysis is that the origin (position) of failure can be determined from the failure pattern on the fracture surface of an object. This determination may be aided by an understanding of how the object was stressed as well as other factors such as environment, temperature, nature of loading, design features, etc."[1] (Cucker Cert., Ex. G at 2) [42-3]. On this basis, Professor Greenhut, determined that raised internal components located at the four high-frequency areas are responsible for the disproportionate grouping of crack-origination points at these locations. (*Id.* at 8). However, Plaintiff has readily admitted, as she must, that a number of the 30gb Zunes sampled by Professor Greenhut fall outside the four high-frequency areas identified in the expert report. (Pl.'s Supp. Br. 12). In addition to the 30gb Zunes with crack-origination points falling outside the high-frequency areas, numerous 30gb Zunes examined by Professor Greenhut did not have an identifiable origination point at all. (Casper Cert., Ex. A at 30, tbl. 3) [48-4]. Plaintiff attempts to explain away these discrepancies by arguing that they are a result of the improper selection of materials—also identified as a design defect by Professor Greenhut—which resulted in high stresses in the LCD glass from "modulus mismatch."

A "modulus mismatch" effect occurs where "two materials are coupled with low (plastic) and high (glass) elastic modulus (stiffness)," which results in "a very much heightened stress (force) [being] applied to the high modulus material (LCD glass)." (Cucker Cert., Ex. G at 2). On the 30gb model Zune, the entire LCD screen was glass and the entire outer casing was plastic. This means that LCD cracks caused by Plaintiff's "modulus mismatch" theory could apparently occur at any location on the LCD screen; cracks originating from a "modulus mismatch" defect cannot be limited to the lower-frequency areas. In other words, cracks

---

[1] This second sentence appears to be an admission by Plaintiff's own expert that completely undercuts Plaintiff's theory of common proof by indicating that individual evidence of the circumstances surrounding each LCD screen failure is needed to accurately determine the cause of each crack.

originating in the high-frequency area may also be the result of "modulus mismatch."  Therefore,

it is impossible to tell which alleged design defect—i.e., the "modulus mismatch" or the

protruding internal components—led to each crack occurring in the high-frequency areas.  This

cannot serve as class-wide proof of causation.  Just as statistical evidence of gender disparity at

the regional or national level in *Dukes* could not establish gender disparity at the local level, even

if the "statistical" evidence proffered by Plaintiff might be considered proof at a more global

level of a design defect, it is not proof of each of the five specifically proffered design defects

more closely identified by the Plaintiff.  This is only one illustrative example of many.[2]  As one

court has noted, "[e]ven where the alleged defect has manifested itself, individual issues of actual

cause must be adjudicated."  *Chin*, 182 F.R.D. at 455.

     In the present case, even if prima facie evidence of causation is established on the basis

of statistically significant recurrence of crack-origination points—something the Plaintiff has not

established, *see supra*—Defendant must be given the opportunity to rebut such an inference.  A

similar case decided in this district that dealt with an alleged design defect is *Ford Ignition*.

There, the court stated: "The question is not whether the [alleged defective products] have the

capacity to cause harm, but rather the highly individualistic inquiry of whether it did cause harm

---

[2] Another illustrative example is the following.  On page eight of the Plaintiff's expert report, Professor Greenhut argues that the segmented placement of the battery will increase the stresses on the LCD screen in three of the four major high-frequency areas and therefore further contribute to LCD-screen cracking.  (Cucker Cert., Ex. G at 6). From this analysis, however, it is unclear what the underlying cause of each crack is in those three areas.  If, for example, high-frequency zone number one (i.e., the entire center of the face of the LCD screen) has a raised component pushing against its backside (as alleged) but it is also affected by local bending (also as alleged), how can one determine which contributing factor was the actual or proximate cause of any particular crack?  In other words, this problem presents numerous unanswered question including: (1) could the raised component alone cause this crack?; (2) could the segmented components and the resulting bending alone cause this crack?; (3) if both bending and raised components are required to cause an LCD crack, and there were no segmented components to cause this required bending, would other external factors nevertheless result in bending sufficient to cause an LCD crack?  These questions, of course, also ignore the possibility that a crack occurring in one of these areas was the result of a "modulus mismatch" defect.  What the unanswered nature of these questions convey is that Microsoft would not be able to present certain defenses against each alleged design defect because Plaintiff has not identified any way to match up its proffered proofs with each alleged defect.  A jury and this Court cannot infer which of the alleged design defects led to which of the alleged cracks based on the "statistical" evidence proffered by the Plaintiff.

and to whom." *Id.* at 490.  In a footnote, the court explained that "[i]t is conceivable that in another class action suit a group of plaintiffs might be allowed to circumvent basic individual causation requirements simply by showing that the subject defective product *always caused* a certain type of harm." *Id.* at 490, n.4 (emphasis added).  This is not the case here.  The court in *Ford Ignition* rejected the plaintiffs' proffer of statistical analysis in place of individual proof; an inference was not afforded to these statistics. *Id.* at 491–93.   Plaintiff's proposed "statistical" evidence in this case similarly suffers from a "failure of inference" as it relates to each specifically alleged design defect.

The court in *Ford Ignition* relied heavily on the Third Circuit's decision in *Barnes v. Am. Tobacco Co.*, 161 F.3d 127 (3d Cir. 1998).  In *Barnes*, the Third Circuit rejected an argument that statistical evidence satisfied the plaintiffs' burden at the class certification stage.  The court held that even if prima facie evidence of causation could be established on the basis of class-wide questionnaires, defendants would have to be afforded the opportunity to cross-examine each individual plaintiff. *Id.* at 145–46; *see also Dukes*, 131 S. Ct. at 2555 (plaintiff's evidence suffered from a "failure of inference" because it could be rebutted on a case-by-case basis).  This was an impossible litigation plan, and therefore class certification was rejected.  Similarly, in this case, the only way in which the Defendant could rebut Plaintiff's proposed class-wide evidence would be through the presentation of individual evidence regarding the circumstances surrounding each cracked LCD screen.  (*See, e.g.*, Cucker Cert., Ex. G at 2 (Failure analysis "may be aided by an understanding of how the object was stressed as well as other factors such as environment, temperature, nature of loading, design features, etc.")).

As Defendant correctly points out, lack of damage to the outer lens does not preclude evidence that other portions of the outer shell of the 30gb Zune were damaged by misuse. Plaintiff has repeatedly tried to gloss over this fact by conflating damage to the external lens

10

covering the LCD screen with external damage more generally.  (*See, e.g.*, Pl.'s Supp. Br. 2 ("[T]he class by definition includes only owners whose 30GB Zunes had LCD cracking without external damage.")).  Plaintiff's class definition, however, deals only with external damage to "the outer screen that covers the LCD screen."  Plaintiff's proposed class does not take into consideration damage to the external plastic case not covering the LCD screen.  As Plaintiff's expert stated, misuse or accident is "characterized by *damage to the case* or the lens cover of the LCD."  (Pl.'s Supp. Br. 2 (quoting Wolfe Cert., Ex. A, at 5) (emphasis added)).  Plaintiff's proposed class, however, would likely include certain Zune owners whose LCD screen cracked and whose outer cover lens did not crack (thereby putting them within the class as defined by Plaintiff), but whose external plastic case still showed signs of misuse.  Plaintiff has provided no workable solution to exclude these Zune owners from the proposed class.  In Professor Greenhut's deposition, for example, he conceded that in certain of the pictures of damaged LCD screens that he examined for his report he could not determine whether there was damage to the outer plastic case—the only visible portion of the Zune in many of the examined pictures was the plastic cover lens.  (*See* Casper Cert., Ex. C, Greenhut Dep. at 43:4–49:13).  As a result, Defendant would have to be given the opportunity to cross-examine each Zune owner to assure that there was no damage to the outer casing (as opposed to the outer lens covering the LCD screen) that resulted from misuse or abuse.  This would result in hundreds of "mini-trials."

Other problems persist for Plaintiff in seeking certification.  The number of reported cases in which an LCD screen cracked (i.e., 1.3% of all 30gb-model Zunes sold) is too small for this Court to afford an inference of a design defect based upon Plaintiff's proffered evidence. *See Chin*, 182 F.R.D. at 455 ("Proving a class-wide defect where the majority of class members have not experienced any problems with the alleged defective product, if possible at all, would be extremely difficult.").  Numerous courts have rejected class certification based on failure rates

similarly as small.  *See, e.g.*, *Payne v. FujiFilm U.S.A., Inc.*, No. 07-385, 2010 U.S. Dist. LEXIS

52808, at *9–18 (D.N.J. 2010) (4% and 2%) (collecting cases); *In re Cannon Cameras Litig.*,

237 F.R.D. 357 (S.D.N.Y. 2006) (0.2%).  Also, the Court notes that 1.3% is the percentage

failure rate prior to taking into consideration any of the five alleged design defects.  Thus, the

small percentage of failures caused by each of the five specifically alleged defects is even

smaller than the total failure rate.

      Plaintiff argues that these cases are all distinguishable from the facts of this case because

the proposed class members in these cases consisted of all purchasers of the defective product.

Here, in contrast, the proposed class is significantly smaller such that the alleged defect

manifested itself in the majority of—and according to the Plaintiff, all of—the proposed class

members' Zunes.  Plaintiff's claim, however, is premised on a design defect in all 30gb Zunes—

the vast majority of which showed no signs of a defect.  This "lack of evidence of a common

defect amongst the majority of users [is] instructive as to the plaintiff's failure to demonstrate

that common factual issues predominate over individual ones."  *Payne*, 2010 U.S. Dist. LEXIS

52808, at *14 (citing *Arabian v. Sony Elecs. Inc.*, No 05-1741, 2007 U.S. Dist. LEXIS 12715, at

*39).   In *Payne* the court concluded that "to certify the class of all [defective product] owners,

then determine the few that suffered malfunctions, then determine which of those suffered

'power related' malfunctions, and then determine which of those 'power related' malfunctions

are attributable to the alleged joint solder defect as opposed to the variety of other reasons for

such power problems, 'would render the class action device nothing more than a facade for

conducting a small number of highly individualized cases.'"  *Id.* at *17 (quoting *In re Cannon

Cameras Litig.*, 237 F.R.D. at 360).  Plaintiff attempts to eliminate some of these concerns in this

case by restricting the class definition to only those Zunes that actually had LCD screen damage.

Despite this valiant effort to eliminate certain problems in certifying the proposed class, many of

these same concerns still exist. Here, after class certification, the court would still have to determine which LCD fractures resulted from misuse, abuse, or other problems, such as unavoidable glass impurities, (*see generally* Cucker Cert., Ex. G at 4–5), and then determine which of the remaining fractured LCDs resulted from each of the five alleged design defects. Plaintiff's proposed class-wide evidence does not provide a workable solution for determining either of these issues.

Lastly, Plaintiff argues in her original briefing that internal Microsoft communications establish causation. Although this evidence certainly corroborates the Plaintiffs' claim that a defect existed, such evidence does not establish causation as to each individual class member's injury. Generalized statements about a design defect are merely that—general statements; they fail to show that all LCD cracks *must* have been the result of this alleged defect. Just as in *Dukes*, anecdotal evidence generally cannot serve as a basis for class certification. Even if these communications did create an inference that all LCD cracks were the result of a design defect, the Defendant must still be permitted to rebut this inference by showing owner misuse or abuse on a case-by-case basis. Thus, Plaintiffs again run into the problem of having to hold possibly hundreds of "mini-trials." Individual issues would undoubtedly predominate.

  b. <u>Application to Consumer Fraud Claims</u>

In her supplemental briefing, Plaintiff argues that regardless of the issue of proving causation, class certification is appropriate for its consumer fraud claims because Defendant's alleged misrepresentations were uniform across the class. Plaintiff alleges that Microsoft employees were instructed to deny all requests for repair or replacement, using the following script: "Our investigations have shown that these issues are caused by accident or by abuse instead of by any inherent problems with the device." (Gardner Cert., Ex. A). As Defendant correctly points out, however, even assuming that a "scripted" response by Microsoft employees

13

was demonstrably false, this still would not alone cause injury to class members whose LCD screens cracked as a result of misuse or abuse.

The New Jersey Consumer Fraud Act (NJCFA) "requires that, in order to recover *any* damages, a plaintiff must show that she has suffered an ascertainable loss *as a result of* the defendant's unlawful commercial practice." *Cannon v. Cherry Hill Toyota, Inc.*, 161 F. Supp. 2d 362, 374 (D.N.J. 2001) (citing N.J.S.A. 56:8-19) (emphasis original); *see also Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009).  By necessity, Plaintiff's consumer fraud claims rely on being able to prove that Defendant's design defects caused class members' injuries.  The only way in which Microsoft employee's scripted response would cause harm to a class member would be if this statement caused a class member to be denied a repair or replacement to which he or she was otherwise entitled.  In order to prove that a class member was entitled to a repair or replacement, that class member would have to prove that his or her cracked LCD was not a result of misuse or abuse (i.e., that there was a design defect or a mechanical failure).  *See Marcus*, 2010 U.S. Dist. LEXIS 122908, at *33 (stating that ascertainable loss could be established only if the plaintiff could prove a design defect).[3]  As explained above, Plaintiff has no class-wide proof of a design defect.  If class member's injury

---

[3] Plaintiff's reliance on *Marcus* is unavailing.  In that case, the plaintiff alleged that the defendants should have disclosed to purchasers a design defect of which the defendants were aware.  *Id.* at *34–36.  Causation was therefore presumed.  *Id.* at *36.  In this case, it is not alleged that class-members purchased their 30gb Zunes on the basis of an omission, but that an affirmative misrepresentation caused their alleged injuries. The *Marcus* court specifically contrasted the facts of that case with other cases dealing with an affirmative oral misrepresentation in which causation could not be presumed.  *See id.* (citing *Stephenson v. Bell Atl. Co.*, 177 F.R.D. 279, 292–93 (D.N.J. 1997); *Carroll v. Cellco P'ship*, 713 A.2d 509 (N.J. Super. Ct. App. Div. 1998); *Hannan v. Weichert S. Jersey, Inc.*, 2007 N.J. Super. Unpub. LEXIS 1238, *10 (N.J. Super. Ct. App. Div. 2008) (holding that presumption of causation does not apply where the fraud involves oral misrepresentations)).

Plaintiff also relied on *Marcus* for the proposition that "a 'New Jersey sub-class is much smaller, and, therefore, more manageable,' and that 'manageability difficulties serve as less of an impediment to certification in cases where no practical alternative exists, and this is such a case.'"  (Pl.'s Supp. Reply Br. 5 (quoting *Marcus*, 2010 U.S. Dist. LEXIS 122908, at *39)).  The *Marcus* court, however, made these pronouncements in the context of determining whether issues of *law* would predominate at trial; the court made no mention of the manageability of state-wide class actions based on whether questions of *fact* would predominate at trial.  *See Marcus*, 2010 U.S. Dist. LEXIS 122908, at *38–39.  Plaintiff's reliance on this case is therefore inapposite.

was the result of mechanical failure, individualized evidence would be necessary to prove this claim.

Moreover, as briefly explained above, class certification on the basis of oral representations is generally disfavored. *See Demmick*, 2010 U.S. Dist. 94041, at *40 (citing *Johnston v. HBO Film Mgmt.*, 265 F.3d 178, 185–86, 190 (3d Cir. 2001); *In re LifeUSA Holding, Inc.*, 242 F.3d 136, 147 (3d Cir. 2001)). "This is because the Supreme Court of New Jersey has held that individual issues regarding plaintiff's behavior may, in certain cases, defeat predominance in a NJCFA class action, despite the uniformity of a defendant's misrepresentations or omissions." *Nafar v. Hollywood Tanning Sys., Inc.*, 339 F. App'x 216, 223 (3d Cir. 2009) (citing *Int'l Union of Operating Eng'gs Local 68 Welfare Fund v. Merck & Co.*, 929 A.2d 1076, 1087 (N.J. 2007)). Plaintiff's "reasoning minimizes the complexity of the issue." *Id.*

Thus, Plaintiff's consumer-fraud argument is unavailing. Any class-wide trial would still be dominated by individual questions of whether Microsoft employees' scripted response caused class members' injuries.

c. Rule 23(b)(2) Certification

Plaintiff makes one final argument in favor of class certification: that certification is appropriate on the basis of injunctive relief under Rule 23(b)(2). The Court, however, rejected this argument in its original Opinion, (s*ee* Op. of Nov. 21, 2011, at 3 n.1), and Plaintiff has presented the Court with no compelling reason why it should revisit that holding here.

**IV.     CONCLUSION**

For the foregoing reasons, Plaintiff's motion is denied.  An appropriate order will follow.


_/s/ Anne E. Thompson_
ANNE E. THOMPSON, U.S.D.J.

Date: March 5, 2012